## Saulino Estate

*Howard McMorris*, for accountant.

*Joseph P. Gaffney, Sr.*, for Board of City Trusts.

*J. Russell Gibbons*, amicus curiae.

LEFEVER, J., March 14, 1957.—Antonio Saulino died April 24, 1898, leaving a will and codicil thereto which were duly probated. Therein, after giving certain pecuniary legacies, he bequeathed the residue of his estate to his trustee (Fidelity Insurance Trust and Safe Deposit Company which later became Fidelity Trust Company and is now Fidelity-Philadelphia Trust Company), to pay from the income an annuity to his brother, Giuseppi, and an annuity to his friend, Maria Bona, during their respective lives. Testator provided further that the trustee pay the balance of the income to the Philadelphia Musical Association, "in trust, as a special fund, kept separate from any other moneys of the Association, and to be used only in assisting deserving musicians, who have been members in good standing for at least three (3) years, and who may be in want of assistance either on account of sickness or other misfortune for which they are not responsible. I desire that the amount to be given to any deserving applicant shall not exceed the sum of fifty (50) dollars in one year, nor to continue for more than two (2) succeeding years to the same individual. My reasons for this is that I wish that more than a few shall participate in the benefit. . . ." Testator concluded: "Should the Philadelphia Musical Association decline to accept my gift, or at any future time, should the Society disband, I direct that, after the death of my brother, Giuseppe Saulino and Miss Maria Bona, the securities comprising my estate shall be sold, and the money realized from them shall be turned

over by the trustees to the Judges of the Orphan Court of the City of Philadelphia, for them to divide the same among unsectarian charitable institutions of the City of Philadelphia, through which poor people will derive the most good."

The annuitants, testator's brother and friend as above referred to, have long since died, and the fund accounted for was last awarded to the trustee to pay the income to the Philadelphia Musical Association for the purposes specified in the will of testator.

The Philadelphia Musical Association was incorporated under the laws of Pennsylvania as a nonprofit corporation by decree of the Court of Common Pleas of Philadelphia County, dated June 5, 1865. The object of the association was to unite the musical profession for the protection and better regulation of its members and to promote the cultivation of the art of music. The membership consisted of local musicians during an era when there were no musicians' unions. Practically every Philadelphia musician was, at one time, a member of this association; members included renowned band leaders, teachers and instructors, and instrumentalists.

By decree of Court of Common Pleas No. 4 of Philadelphia County, dated August 26, 1952, The Philadelphia Musical Association was dissolved: C. P. No. 4, June term, 1952, no. 1166. At the time of dissolution there were 118 members in good standing, having an average age of about 75 years. Many of them still survive. A number of them are no longer active in the music profession and depend upon Federal and State assistance for their maintenance.

The present account was filed because of the dissolution of the Philadelphia Musical Association.

By decree of this court, dated March 5, 1953, J. Russell Gibbons, Esq., was appointed amicus curiae,

with the powers of a master to vouch the present account, to take testimony, conduct such inquiries and make such other investigations as would enable him to make appropriate recommendations to the court as to the distribution of the principal of, and income from, the trust estate, which· is now the subject of accounting, and to report to the court his findings of fact, his conclusions of law, and his recommendations.

The amicus curiae has conducted an extensive investigation and inquiry, and held various hearings at which learned counsel for well-recognized charities appeared, all as set forth in his able and comprehensive report, which is hereto annexed. The report states that the surviving members of the Philadelphia Musical Association have reorganized as a voluntary nonprofit association. Many of them are elderly needy musicians. Apparently, it was their need of funds that led them to dissolve the corporate existence in the hope and belief that the corporate assets would be partitioned and distributed among the survivors. The amicus curiae properly urges that this possibly ill-advised action should not deprive them of much needed assistance under the provisions of testator's will.

The will of testator is clear. His dominant intent was the distribution of the income of the trust to the association upon a separate trust divorced entirely from other moneys of the association, for the benefit of its needy members in the case "of sickness or other misfortune". It was testator's needy musician friends, as members of the association, that he primarily had in mind as the objects of his bounty and *not* the corporate entity which was to dispense the funds.

It is equally clear, however, that in the event the association declined to accept testator's gift upon the terms which constituted the trust or disbanded, the corpus of the trust was to be distributed as determined

by this court "among unsectarian charitable institutions of the City of Philadelphia, through which poor people will derive the most good". However, this is subservient to the dominant intent stated above.

Clearly, testator has manifested an intention to create a trust for two charitable purposes, his primary purpose being for the assistance and relief of poverty of the musicians who were members of the association, and secondarily, upon the nonacceptance or the failure of the prime gift of income, the distribution of the corpus "among unsectarian charitable institutions of the City of Philadelphia, through which poor people will derive the most good", to be selected by the court.

There is no doubt that the needy members of the Philadelphia Musical Association are valid objects for a charitable trust. ". . . A trust for the relief of poverty is charitable although the beneficiaries are limited to the members or the families of members or the widows and orphan children of former members of particular organizations, such as a particular church, or a Masonic or other fraternal organization or a particular lodge of such an organization, miners' associations, theatrical associations, labor unions, organizations of employees of a particular railroad or other large employer of labor": Restatement of the Law of Trusts, §369, Comment g, p. 1145; Ralston's Estate, 290 Pa. 374; Channon's Estate, 266 Pa. 417; Zimmerman v. Anders, 6 W. & S. 218. "A trust to aid persons who are in need is a charitable trust although the persons to be aided are not absolutely destitute. Thus, a trust to assist persons who have an income which does not afford the necessities of life without such assistance is charitable . . .": Restatement of the Law of Trusts, §369, Comment d, pp. 1143-44; Daly's Estate, 208 Pa. 58; Cresson v. Cresson, 5 Clark 431.

There is no need to apply the cy pres doctrine in this case. In the words of the late distinguished President Judge Holland in the analogous case of Reed's Estate, 60 Montg. 322, 326: "The testator clearly designates this court as the absolute authority to choose the successor. He puts this court in identically the same position as if he had named the choice of the court in his will and with the same force and effect. It is not even a case the approach of which is the application of the cy pres doctrine. In this latter instance, the court would, as a judicial finding, be endeavoring to ascertain the proximate intent of the testator, whereas here the court has the choice of the successor according to its absolute discretion. We prefer, however, and we have the prerogative so to do, to treat the case in the same manner as we would if we were applying the cy pres doctrine. Our approach is to endeavor to ascertain what, according to the description and indication in the will, the testator would likely choose as the successor to . . ." the Philadelphia Musical Association.

Taking into consideration all the facts of the instant case, and exercising the broad discretion contained in the will, the auditing judge adopts the recommendations of the learned amicus curiae to continue the trust for the time being, to assist and aid in the relief of poverty of the deserving musicians, who had been members of the Philadelphia Musicians Relief Society for three years immediately prior to the surrender of its charter and the entry of the decree of the Court of Common Pleas on August 26, 1952. To this end, the Board of Directors of City Trusts by formal resolution adopted April 20, 1956, has signified its willingness to accept an award of the principal of this trust and award of the income, and to administer the trust "in accordance with such directions as the Court may make for the assistance of deserving musicians, par-

ticularly those who were members of the now disbanded Philadelphia Musical Association". The auditing judge is of opinion that the Board of Directors of City Trusts is well prepared to administer this trust. It has effectively done so in other similar cases. See Ashbridge's Estate, 61 D. & C. 279. The corporate accountant, in contrast, does not have the ready facilities therefor, and wishes to be relieved of the trusteeship.

The trust fund will be awarded to the City of Philadelphia, Board of City Trusts, in trust, to pay and distribute the income now on hand or hereafter accruing, not exceeding $50 annually nor for more than two succeeding years to the same individual, who shall qualify on the basis of having been a member of the Philadelphia Musical Association for three years immediately prior to its dissolution. Distribution of income shall cease, and further application shall be made to this court, at the death of the last survivor of such members of the dissolved Philadelphia Musical Association, or at such earlier date as the Board of Directors of City Trusts deems it advisable to recommend to this court that the trust should be terminated and the corpus be distributed. Thereupon, this court will determine what "unsectarian charitable institutions of the City of Philadelphia", shall receive the corpus and award distribution accordingly: Funk Estate, 353 Pa. 321.

The Board of City Trusts, as substituted trustee, shall submit a report to this court annually, showing such distribution of the income as has been made, with a listing of the names of the recipients and the amounts so paid: Ashbridge Estate, supra. . . .

And now, to wit, March 14, 1957, the account is confirmed nisi.